IN THE MATTER OF THE APPLICATION OF FRANK LEG-
DON FOR ISSUANCE OF WRIT OF HABEAS CORPUS.

Mercer County Court
Law Division

Decided April 26, 1951.

*Mr. Frank Legdon,* petitioner, *pro se.*

HUGHES, J. C. C. This petitioner applies for the writ of *habeas corpus* under *R. S.* 2:82–1 *et seq.,* on the ground that he is unlawfully detained in the New Jersey State Prison, and in support thereof makes the following claims:

He states that he was born September 11, 1926, and at the age of 13 years was committed for juvenile delinquency (truancy) to the State Home for Boys at Jamesburg, an institution of the State described in *R. S.* 30:4–156 *et seq.;* that upon attaining the age of 16 years he was transferred by order of the commissioner under the statute *R. S.* 30:4–85, to the New Jersey Reformatory at Annandale, a reformatory described in *R. S.* 30:4–150 *et seq.;* that in April, 1944, he was paroled from Annandale, but by reason of changing

employment in violation of the parole conditions, the same was revoked and he was returned to Annandale, being reparoled a month later, in May, 1944. In the latter part of May, 1944, he was sentenced in the former Court of Quarter Sessions of Passaic County to the Annandale Reformatory on conviction of the crime of receiving stolen goods.

The petitioner here leaves a gap in his narrative, but the institutional records (which he is at liberty to challenge if he wishes) indicate that he entered Annandale on the receiving sentence on June 2, 1944, was transferred by the commissioner to the former New Jersey Reformatory at Rahway on July 18, 1944 (*R. S.* 30:4–85, *supra*; *R. S.* 30:4–146, as amended, *L.* 1948, *c.* 60, *p.* 149, § 3), and escaped from such institution on November 23, 1944. A short time later, apparently while still at liberty on such escape, he was again convicted of crime.

I now return to petitioner's recital of events as contained in his petition. He entered the New Jersey State Prison on January 19, 1945, to serve a sentence of not less than six nor more than seven years, imposed upon him in the former Court of Quarter Sessions of Passaic County on conviction of the crime of atrocious assault and battery (*R. S.* 2:110–1). He served the maximum of this sentence, which after credit of the uniform commutation time due him under *R. S.* 30:4–140, expired on July 17, 1950. The State Prison authorities continue to hold him to serve out the unexpired maximum of his said receiving sentence to Annandale, the commissioner being authorized by *R. S.* 30:4–85, *supra*, to require him to serve the balance of such sentence at such prison. *Ex parte Zinowicz*, 12 *N. J. Super.* 563 (*Cty. Ct.* 1951). The State Prison Admissions and Record Clerk advises petitioner that his "adjusted maximum" on this term is January 20, 1957, less employment credits to which he may become entitled (*R. S.* 30:4–92) and subject, of course, to the possibility of parole before the expiration of such maximum.

Now a word as to the nature of the sentence on which he is presently held. Since the punishment on the conviction

for receiving consisted of a sentence to the reformatory at Annandale, it was an "institutional sentence,"* which has no fixed minimum and of which the maximum corresponds to the statutory maximum term for the particular crime, which, for the high misdemeanor of receiving, amounts to seven years (*R. S.* 2:164–1, *R. S.* 2:103–5). On this type of sentence, unlike the direct minimum-maximum term to State Prison, the erstwhile reformatory inmate is immediately and always eligible for consideration for parole, despite the continuing service of such sentence at the State Prison. *Ex parte Zinowicz, supra.*

It is suggested that shortly before petitioner's escape, consideration was being given his parole, but that parole apparently did not become effective and he was thus at liberty as an escaped prisoner when he was convicted of the subsequent crime of atrocious assault and battery.

This petitioner complains that the court in Passaic County, in 1945, did not specify that the six-to-seven year sentence imposed by it was to be served consecutive to or apart from any "parole or back time that I may owe" the Annandale institution. He thus necessarily argues that this time was served concurrently with the sentence completed on July 17, 1950. But such specification in the sentence imposed on the latter crime was unnecessary, whatever petitioner's status was at the time of such sentence.

█ If he were then on parole, one of the parole conditions would have subjected him to revocation thereof in the event of conviction of crime while on parole. And in such case, neither the time elapsed during liberty on parole nor the time served on the subsequent sentence, which expired on July

---

* *R. S.* 30:4–152. Sentences. "The courts in sentencing to the reformatory shall not fix or limit the duration of sentence, but the time which any person shall serve in the reformatory shall not in any case exceed the maximum term provided by law for the crime for which the prisoner was convicted and sentenced, and the term of service may be terminated by the board of managers of the reformatory in accordance with its rules and regulations formally adopted."

17, 1950, would have run in diminution of the time which he would be bound to serve on his reformatory sentence, the interval between January 19, 1945, and July 17, 1950, being attributable only to the sentence imposed in 1945 on the conviction for atrocious assault and battery. *Ex parte Macejka,* 10 *N. J. Super.* 393 (*Cty. Ct.* 1950).

■■ Nor does any interval of time while the prisoner is at large on escape run against his sentence. It is fundamental that a sentence of imprisonment is satisfied only by the actual suffering of the imprisonment imposed, unless remitted by death or by some legal authority. This rule applies to the "institutional sentence" referred to, for unless paroled by the institutional board of managers (*R. S.* 30:4-152), or the New Jersey State Parole Board (*L.* 1950, *c.* 30; *R. S.* 30:4-123.40 *et seq.*), or pardoned by the executive (*Const.* 1947, *Art. V, Sec. II, par.* 1; *R. S.* 2:196A-1 *et seq.; Ex parte Kneipher,* 12 *N. J. Super.* 407 (*Cty. Ct.* 1951)), and except for time allowances granted by *R. S.* 30:4-92, *supra,* the prisoner under such sentence must serve the maximum term provided by law for the crime on which the sentence was based.

■ And while our statute dealing with the effect of escape time on the service of sentences does not deal with escape from the reformatory at Annandale (*R. S.* 2:192-14), that statute is, principally, merely declaratory of the common law (*In re Edwards,* 43 *N. J. L.* 555 (*Sup. Ct.* 1881)), and the rule was firmly established at common law that a prisoner escaping from custody while serving his sentence for a criminal offense is liable to recapture and confinement to serve out his sentence, the time of his voluntary absence on escape not being counted in his favor. *Anderson, Warden, etc. v. Corall,* 263 *U. S.* 193, 44 *S. Ct.* 43, 68 *L. Ed.* 247 (1923); 19 *Am. Jur., Escape, etc., sec.* 22.

Accordingly, I determine that the petitioner is presently held on the unexpired term of his sentence, for the crime of receiving, to the New Jersey Reformatory at Annandale, and that he is not entitled to immediate release. The writ of *habeas corpus* is, therefore, denied him.